## IN THE UNITED STATES DISTRICT COURT
## OF THE CENTRAL DISTRICT OF ILLINOIS
## SPRINGFIELD DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 17-cr-30001** |
| | ) | |
| **PAULA KLAUSTERMEIER,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## OPINION

**SUE E. MYERSCOUGH, U.S. District Judge:**

Before the Court are Defendant Paula Klaustermeier's post-trial motions based on Rules 29(c), 33, and 34 of the Federal Rules of Criminal Procedure (d/e 94). For the reasons set forth below, Defendant's post-trial motions are DENIED.

## I.  BACKGROUND

On January 3, 2017, a four-count Indictment (d/e 1) was filed in this Court. Count 1 charged Defendant Klaustermeier with committing mail fraud between January 2008 through January 2013. Count 2 charged Defendant Klaustermeier with committing mail fraud on September 20, 2012, and Count 2 charged Defendant Klaustermeier with committing mail fraud on September 27, 2012.

Count 4 charged Defendant Klaustermeier with perjury.

Prior to the trial commencing, both parties filed evidentiary motions, including the Government's Combined Motion in Limine (d/e 36), Defendant's Motion to Exclude Video Evidence (d/e 41), the Government's Second Motion in Limine (d/e 46), and Defendant's Motion to Continue (d/e 69).

On March 3, 2020, Defendant Klaustermeier went to trial on Counts 1 through 3 of the Indictment.  The Government moved for dismissal of Count 4, which was granted.  See Text Order dated February 21, 2020.  The jury heard testimony from numerous witnesses for the Government, including James Polcyn (office director of Chicago's Office of Worker Compensation Programs for the U.S. Department of Labor), Dr. John McAtee (Defendant's medical physician), Karen Pyarali (custodian of records for the Edwardsville YMCA), Gary Johnston (Defendant's father), Timothy Hamilton (retired special agent with the U.S. Department of Labor Office of Inspector General in St. Louis), Lloyd Latham (postal inspector with the U.S. Postal Inspection Service), and Michael Hart (employee of MJM Electric Co-Op).  Defendant's mother, Joyce Johnston, Defendant's son, Clayton Klaustermeier, and Defendant's

friend, Andrea Chapman, testified for the defense.  On March 6,
2020, the jury found Defendant Klaustermeier guilty of three counts
of mail fraud.  <u>See</u> Jury Verdict, d/e 85.

On March 9, 2020, without having the benefit of the trial
transcripts, Defendant Klaustermeier filed post-trial motions based
on Rules 29(c), 33, and 34 of the Federal Rules of Criminal
Procedure.  Defendant Klaustermeier's Rule 29(c) motion requests a
judgment of acquittal, arguing that the evidence on which the jury
found her guilty beyond a reasonable doubt of the charged offenses
was insufficient.  Defendant Klaustermeier's Rule 33 motion
requests a new trial and is also based on the insufficiency of the
evidence against her, including the adverse rulings on the pretrial
motions listed above.  Defendant Klaustermeier also complains of
statements made by the prosecutor during the rebuttal closing
argument, which Defendant argues shifted the burden by
commenting on how Defendant did not produce evidence.
Defendant Klaustermeier's Rule 34 motion seeks an arrest of
judgment.  Defendant Klaustermeier's post-trial motions are denied.

## II.  ANALYSIS

### A.  Defendant Klaustermeier Is Not Entitled to a Judgment of Acquittal.

The Federal Rules of Criminal Procedure provide that a criminal defendant may move for a judgment of acquittal "within 14 days after a guilty verdict or after the court discharges the jury, whichever is later."  Fed. R. Crim. P. 29(c)(1).  "A defendant is not required to move for a judgment of acquittal before the court submits the case to the jury as a prerequisite for making such a motion after jury discharge."  Fed. R. Crim. P. 29(c)(3).  Defendant Klaustermeier's Rule 29(c) motion is timely as it was filed three days after the jury rendered its guilty verdicts against her.

In ruling on a motion for acquittal, the Court must determine whether there existed relevant evidence from which the jury could reasonably have found the defendant guilty beyond a reasonable doubt.  United States v. Beck, 615 F.2d 441, 447–48 (7th Cir. 1980).  In making this determination, the Court must view the evidence in the light most favorable to the Government, keeping in mind that it is the exclusive function of the jury to resolve evidentiary conflicts, determine the credibility of witnesses, and

draw reasonable inferences.  Id. at 448.  The Court must examine all the evidence, including that offered by the defendant.  Id.  The Court may grant the motion for acquittal only if "no rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt."  United States v. Pree, 408 F.3d 855, 865 (7th Cir. 2005).  "Any challenge to the sufficiency of the evidence comes with a heavy, indeed, nearly insurmountable, burden."  United States v. Dessart, 823 F.3d 395, 403 (7th Cir. 2016) (internal quotation marks omitted).

To prove the charge of mail fraud, the Government must prove beyond a reasonable doubt that the defendant participated in a scheme to defraud, that the defendant acted with the intent to defraud, and that the defendant used the United States mail in furtherance of the fraudulent scheme.  United States v. Daniel, 749 F.3d 608, 613 (7th Cir. 2014); United States v. Stochel, 901 F.3d 883, 888 (7th Cir. 2018).  The Government need not prove that the defendant personally used the mail, only that the use of the United States mail in furtherance of the fraudulent scheme was reasonably foreseeable to the defendant and that a mailing was sent in furtherance of the scheme.  Daniel, 749 F.3d at 615.  Further, the

Government must prove that the deceptive conduct underlying the fraudulent scheme was "material," meaning that the conduct had a tendency to influence or was capable of influencing the "decision of the decisionmaking body to which it was addressed." United States v. Seidling, 737 F.3d 1155, 1160 (7th Cir. 2013) (quoting Neder v. United States, 527 U.S. 1, 16 (1999)).  A scheme to defraud requires the concealment of a material fact or the making of a false statement or material misrepresentation.  United States v. Sloan, 492 F.3d 884, 890 (7th Cir. 2007).  The intent to defraud requires a willful act by the defendant "with the specific intent to deceive or cheat, usually for the purpose of getting financial gain for one's self or causing financial loss to another."  United States v. Sheneman, 682 F.3d 623, 629 (7th Cir. 2012).  Intent to defraud "may be established both from circumstantial evidence and inferences drawn by examining the scheme itself."  Id.

Here, the evidence presented at trial, viewed in the light most favorable to the Government, was more than sufficient to support the jury's guilty verdicts against Defendant Klaustermeier on the charges of mail fraud.  During the trial, the jury heard testimony that from 2008 through 2013, Defendant fraudulently obtained

reimbursement  from Department of Labor's Office of Workers'
Compensation Programs ("OWCP") for warm water therapy,
sometimes referred to as aquatic therapy.  Defendant obtained
reimbursement after filling out OWCP forms stating that she
completed warm water therapy at four YMCA facilities – in
Edwardsville, Illinois, Lakeland, Florida, Tampa, Florida, and
Belleville, Illinois.

Karen Pyarli, records custodian of the YMCA in Edwardsville,
testified that Defendant used to have a membership at the YMCA in
Edwardsville, but the membership ended on October 1, 2008.
Thereafter, Defendant never paid for a membership at the YMCA in
Edwardsville.  That YMCA has no record of Defendant coming into
their buildings – as a guest or a member – from October 1, 2008
(the date the membership ended) to the present.  Yet, Defendant
claimed reimbursement for doing warm water therapy at the YMCA
in Edwardsville.  For example, Defendant claimed to have attended
warm water therapy at the YMCA of Edwardsville in November
2009, dates for which the YMCA of Edwardsville has no record of
attendance and no active membership.  Moreover, two of the days
that Defendant claimed she attended warm water therapy at

Edwardsville prior to her membership ending, the facilities were closed for holidays – Easter and Labor Day. Ms. Pyarli testified Defendant could not have accessed the buildings or the pool on those two days.

The Government read a document to the jury from Sharon Andrews, the administrative assistant from the YMCA of West Central Florida, Inc., located in Lakeland, Florida. On November 7, 2013, Ms. Andrews completed a search of the business' records for the name Paula Klaustermeier and similar names. The records went back to 2005. The YMCA in Lakeland had no record of Defendant being a member, and it had no record of her going into the facility, either as a guest or a member. Defendant claimed to have attended warm water therapy at the YMCA of West Central Florida, Inc. in Lakeland from June to December 2008, dates for which the YMCA in Lakeland has no record of attendance and no active membership.

The Government also read a document to the jury from Dawn Phelps, the vice-president and chief financial officer for the Tampa Metropolitan Area YMCA located in Tampa, Florida. Ms. Phelps conducted a search of the records for the YMCA in Tampa relating

to Defendant.  That YMCA had no record of any membership for Defendant and no record of Defendant visiting as a guest or member.  Defendant claimed she attended warm water therapy at the YMCA in Tampa from November to December 2010 and dates in 2012, dates for which the YMCA in Tampa had no record of attendance and no active memberships for Defendant.

Defendant also submitted reimbursement for attending warm water therapy at a YMCA in Belleville.  The address listed for the purported YMCA in Belleville, for which Defendant sought reimbursement, was the address of her parent's residence.  Defendant did not attend warm water therapy at an actual YMCA in Belleville, Illinois.  At trial, Defendant argued that someone else put YMCA in Belleville, Illinois, on the form.  Defendant's father, Gary Johnston, testified that he and his wife, Joyce Johnston, do not run a business, do not own a business, and are not a YMCA.  However, Mr. Johnston did testify that Defendant could use the pool any time she wanted.

The Government presented evidence at trial that Defendant did not have OWCP's approval to attend warm water therapy at her parent's house.  While Dr. McAtee stated that Defendant would

benefit from warm water therapy, OWCP never approved Defendant attending therapy at a residence instead of a business that has a warm water pool. Defendant claimed she went to her parent's house, which she claimed was the YMCA in Belleville, 1,029 times.

Defendant's friend, Andrea Chapman, recalled driving Defendant to her parent's house and meeting Defendant at her parent's house on different occasions to do water therapy. However, Ms. Chapman could not recall the years or a time frame when that occurred. Ms. Chapman also testified that she saw Defendant in the pool and doing what Defendant claimed was water therapy. Clayton Klaustermeier testified that he attended warm water therapy with his mother hundreds of times at the YMCA in Edwardsville and at her parent's house. However, he testified that he did not attend therapy with his mother in Florida. Although Clayton Klaustermeier and Ms. Chapman testified they went with Plaintiff to water therapy, neither of them could recall specific dates. Additionally, Defendant's mother, Joyce Johnston, testified that she saw her daughter in Mrs. Johnston's pool and hot tub but could not recall any details. Mrs. Johnston testified several times that she is often not home.

Moreover, Inspector Latham went through numerous days of video footage of Defendant's house correlating to dates that Defendant sought reimbursement for warm water therapy. In the videos, Defendant is sometimes seen walking around outside, never leaving the property, or leaving the property for an amount of time inconsistent with driving to and from her parent's house for therapy. For example, on September 6, 2012, Inspector Latham testified that the video footage from September 6, 2012, shows Defendant did not leave the house that day. Yet, Defendant sought reimbursement for warm water therapy from her parent's house on that date.

Clayton Klaustermeier testified that the video footage of the house lacked physical attributes of the property that should have been on the property during this time period the footage was recorded, including a flight pen[1] and a tree. Clayton also testified that his mother often left the house from the road in the back of the house that the footage did not capture.

The Government called Mike Hart, employee of MJM Electric,

---

[1] Clayton Klaustermeier testified that the flight pen was something his father built to house and raise birds, which were submitted in competitions.

as a rebuttal witness to testify that he personally placed the camera on the pole near Defendant's property.  Inspector Latham testified that the video footage is not a video stream.  Instead, the video is a series of images.  The time between the images varies depending on the weather.  Sometimes the snapshots are continuous, while other times the snapshots have a gap of few seconds

Mr. James Polcyn testified that Defendant received the reimbursement checks and deposited them.  Therefore, Defendant used the mail to carry out the fraud.  Moreover, Inspector Latham testified that he interviewed Defendant on November 7, 2013, at which time Defendant said she did in fact attend all of the therapy sessions and that she had a membership at the two Florida locations.  However, evidence at trial showed that Defendant had no membership at any of the relevant YMCA facilities after October 1, 2008.

As part of the overall scheme to defraud, which began prior to 2008, the Government presented evidence that Defendant falsified documents purportedly from her physicians.  The evidence also showed that Defendant tampered with the documents.  Dr. McAtee, the treating physician, testified that an OWCP form from November

2006, which bore his signature, was not in fact written by him.  He said it was not his signature on the form, and he would not have written the phrase "rotary cuff," which is found in the document.  A letter that is attached to the form dated November 9, 2006, had the same signature, which Dr. McAtee testified again was not his signature.  Dr. McAtee also testified that he would never have written some of the statements that were contained in the letter. Dr. McAtee testified to other documents which did in fact contain his signature.  His signature did not match the signature on the two documents described above.  Dr. McAtee testified that he recalled signing one letter that he knew Defendant wrote.  However, he did not know that any other documents would be attached to the letter, and he never saw the attached documents.  The attachments claimed injuries that Defendant suffering, but Dr. McAtee did not find that Defendant was suffering from those injuries.  Defendant presented documents from another treating physician, Dr. Rathod, stating that Defendant was 100% disabled.  Inspector Latham testified that a letter written by Dr. Rathod dated December 28, 2006, did not appear fraudulent, forged, or altered.  These documents were submitted by Defendant to continue receiving

OWCP wage loss and medical benefits.  However, the wage loss benefits eventually stopped.  Yet, Defendant continued to receive benefits for attending warm water therapy.

The jury heard the testimony presented at trial and found the Government's witnesses and evidence more credible than Defendant's defense.  The evidence presented at trial, viewed in the light most favorable to the Government, was sufficient to find Defendant guilty of the offenses with which she was charged.  Based on this evidence, Defendant has not met her burden of establishing that no rational jury could have found her guilty of mail fraud.  Defendant is not, therefore, entitled to a judgment of acquittal.

### B.  Defendant Klaustermeier Is Not Entitled to a New Trial.

The Federal Rules of Criminal Procedure state that a court "may vacate any judgment and grant a new trial if the interest of justice so requires."  Fed. R. Crim. P. 33(a).  If a Rule 33 motion is based on "any reason other than newly discovered evidence," the motion "must be filed within 14 days after the verdict or finding of guilty."  Fed. R. Crim. P. 33(b)(2).  Because Defendant Klaustermeier's Rule 33 motion was filed three days after the jury

rendered its guilty verdicts against her, the motion is timely.

In ruling on a motion for a new trial, the Court must consider the weight of the evidence and, in doing so, must consider the credibility of the witnesses.  United States v. Washington, 184 F.3d 653, 657-58 (7th Cir. 1999).  In ruling on a motion for a new trial, the Court need not view the evidence in the light most favorable to the Government.  Id. at 657.

The Court must grant a new trial if the evidence weighs so heavily against the verdict that "it would be a miscarriage of justice to let the verdict stand."  Id. at 658; see also United States v. Morales, 902 F.2d 604, 608 (7th Cir. 1990), as modified by United States v. Morales, 910 F.2d 467 (7th Cir. 1990) ("If the complete record, testimonial and physical, leaves a strong doubt as to the defendant's guilt, even though not so strong a doubt as to require a judgment of acquittal, the district judge may be obliged to grant a new trial.").  The granting of a new trial pursuant to Rule 33 is reserved for only the most "extreme cases."  United States v. Peterson, 823 F.3d 1113, 1122 (7th Cir. 2016).

Defendant Klaustermeier does not specifically state the reasons for a new trial.  However, in the motion, Defendant

complains of several adverse pretrial rulings and statements made in the prosecutor's rebuttal closing. The errors taken as a whole, Defendant Klaustermeier argues, are such that Defendant did not receive a fair trial. Moreover, Defendant contends that the evidence adduced at trial was insufficient to convict Defendant Klaustermeier beyond a reasonable doubt. Based on the following, Defendant Klaustermeier has not established that she is entitled to a new trial.

**1. The adverse pretrial rulings do not entitle Defendant to a new trial.**

Defendant complains that she is entitled to a new trial based on the adverse pretrial rulings, including granting the Government's combined motion in limine (d/e 36), denying Defendant's motion to exclude video evidence (d/e 41), granting the Government's second motion in limine (d/e 46), and denying Defendant's motion to continue (d/e 69).

At the final pretrial conference held on February 24, 2020, the Court heard arguments on the Government's combined motion in limine (d/e 36). Several of the individual requests made in the combined motion in limine were disposed of by agreement of the parties or the Government withdrew its intention to admit the

documents.  For example, the request to admit correspondence with

Defendant's former attorney was withdrawn.

The remaining contested issue was whether the Court would

admit all evidence of Defendant's OWCP fraud.  <u>See</u> d/e 36, p. 10.

On March 5, 2020, the Court granted the Government's motion to

admit all evidence of Defendant's OWCP fraud.  <u>See</u> Text Order

dated March 5, 2020.  The Court found as follows:

> The evidence is admissible as direct evidence of the
> existence of the defendant's scheme to defraud and,
> although the Court is not required to make such a
> finding, it is likely admissible as 404(b) evidence. The
> probative value of the evidence is not outweighed by the
> concerns raised by Defendant. See Fed. R. Evid. 403.
> Defendant's request for a limiting instruction is also
> denied at this time as it would confuse the jury.

<u>See</u> Text Order dated March 5, 2020.

The Court admitted evidence of other acts of Defendant's fraud

as direct evidence, including the altered medical notes and other

false travel reimbursements, because the acts were in furtherance

of the overall fraudulent scheme.  However, the Court also made a

finding that the evidence was likely admissible as character

evidence under Rule 404(b).

In general, "[e]vidence of a crime, wrong, or other act is not

admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). However, the evidence may be admissible for another purpose, such as proving knowledge, identity, or absence of mistake. Fed. R. Evid. 404(b)(2). Determining whether other-act evidence is admissible depends not only on the reason for which the evidence is offered, but also on "the chain of reasoning that supports the non-propensity purpose for admitting the evidence." United States v. Gomez, 763 F.3d 845, 856 (7th Cir. 2014). Rule 404(b) bars other act evidence if its relevance to a non-propensity purpose "is established only through the forbidden propensity inference." Id. Further, even if the evidence is offered for a non-propensity purpose, the Court may exclude it "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403; see also Gomez, 763 F.3d at 856-57.

"A mailing in furtherance of a scheme to defraud is simply the element that confers federal jurisdiction under the mail fraud

statute; but a fraud scheme can produce proceeds long before the act that ultimately triggers jurisdiction." United States v. Boone, 628 F.3d 927, 934 (7th Cir. 2010).  In Boone, the Court held that the evidence was significant in establishing the scheme, demonstrating specific intent, and establishing knowledge of the crime.  Id. at 935-36.  In Schmuck, the U.S. Supreme Court affirmed a mail fraud conviction in which the mailing occurred well after the fraud was otherwise completed.   Schmuck v. United States, 489 U.S. 705 (1989).  The Court held that it is sufficient for the mailing to be "incident to an essential part of the scheme," . . . or "a step in the plot."  Id. at 710-11.

Defendant defended the charges by saying she lacked the intent to defraud.  The instances of Defendant falsifying travel reimbursements to the YMCA in Edwardsville and the two in Florida, which were acts of other fraud, went with the overall scheme that Defendant employed to defraud the United States.  As such, the Court found that the evidence was admissible under Rule 404(b) to show her intent.  Evidence of intent may only be introduced "when its admission is supported by some propensity-free chain of reasoning."  United States v. Anzaldi, 800 F.3d 872,

882 (7th Cir. 2015) (quoting <u>Gomez</u>, 763 F.3d at 856).  Introducing

evidence of prior bad acts is available to prove intent when the

crime charged is one of specific intent.  <u>Gomez</u>, 763 F.3d at 858.

Thereafter, the Court denied Defendant's motion in limine to

exclude video evidence (d/e 41).  <u>See</u> Second Text Order dated Text

Order dated March 5, 2020.   The Government sought to introduce

pole camera discs containing video surveillance.  See d/e 41.  The

Defendant argued that the Court should exclude the video evidence

because the Government cannot lay the proper foundation in

violation of Federal Rule of Evidence 901.  A party seeking to admit

an item into evidence "must produce evidence sufficient to support

a finding that the item is what the proponent claims it is."  Fed. R.

Evid. 901.  The evidence must also be relevant to an issue at trial.

Fed. R. Evid. 401, 402.  The admitting party's burden of making a

prima facie showing that the item is genuine can be satisfied in

several ways, including through the testimony of a witness with

knowledge or evidence showing that a process or system produces

accurate results. Fed. R. Evid. 901; <u>United States v. Cejas</u>, 761 F.3d

717, 723 (7th Cir. 2014); <u>see</u> <u>also</u> <u>United States v. Fluker</u>, 698 F.3d

988, 999 (7th Cir.2012).  "For video recordings, like tape recordings,

the proponent should also show that the camera functioned properly, the operator was competent in operating the equipment, and the recording fairly and accurately represented the scene depicted." Cejas, 761 F.3d at 723.

While Defendant sought to exclude the evidence based on admissibility grounds, Defendant's objection more properly went to the weight of the evidence. Defendant was permitted to provide discrediting testimony as to the authenticity of the video. For example, Defendant's son, Clayton, testified that he believed the footage was faulty or manipulated because the time stamps jumped and the physical characteristics of the property were modified – a large flight pen and a tree were missing, which should have been seen in the video during that time period. The Court finds that its ruling did not prejudice Defendant, even combined with her other arguments, in a way which would warrant a new trial.

The Government also filed a second motion in limine (d/e 46), seeking to admit all OWCP records that were a part of Defendant's official OWCP case management file. See Second Text Order dated Text Order dated March 5, 2020. Said motion was granted because the Government provided certification of all OWCP documents. Prior

to trial, Defendant also requested admission of a group of exhibits, which came from the certified OWCP file.  As such, the Court finds that Defendant waived any arguments as to the admissibility of the OWCP file.

Thereafter, on March 1, 2020, two days prior to the commencement of the trial, Defendant filed a motion to continue the trial date, which was denied.  <u>See</u> Motion to Continue, d/e 69. Defendant argued that she wanted to hire a forensic expert to opine that the video footage recorded by the Government was altered by the Government.  However, Defendant had not raised the issue with the Court prior to the motion hearing, and the motion was filed on the eve of trial.  Defendant's request for a continuance appeared as a tactic to delay trial and the reasons for a continuance were insufficient.

In Defendant's motion for a new trial, Defendant contends that another basis for granting her relief is "[a]ll other pre-trial and trial motions made by the Defendant which were averse to Mrs. Klaustermeier."  <u>See</u> Motion, d/e 94, p. 2.  The Court will not speculate as to which rulings Defendant refers to and the basis for the objections thereto.

Based on the evidence at trial and the basis for the rulings on the pretrial motions discussed above, Defendant is not entitled to a new trial.

**2. Based on evidence at trial, jury verdicts against Defendant were not against the weight of the evidence, and Defendant is not entitled to a new trial.**

Defendant also argues that the evidence adduced at trial was insufficient to convict Defendant beyond a reasonable doubt. Defendant's motion for new trial is based on the same ground as her motion for a judgment of acquittal – the insufficiency of the evidence against her.  While the Court's analysis of Defendant's insufficient evidence argument is different in determining whether a new trial is warranted than the analysis in determining whether a judgment of acquittal is warranted, given that the standard for granting each motion is different, nonetheless, Defendant has not established that she is entitled to a new trial.

The Government relied on numerous witnesses who testified to Defendant's fraudulent scheme to obtain benefits.  The Government's evidence and witnesses proved that Defendant fraudulently obtained reimbursement for attending warm water therapy at four different YMCA locations.  Defendant did not have

an active membership at three of the locations, and the three locations have no record of Defendant ever attending.  The jury also saw video footage of Defendant never leaving her home or not being gone for long enough on the days she claimed she attended warm water therapy.

Defendant's son, Clayton, tried to discredit the video footage by testifying the footage missed key characteristics of the property for the time period in question and the time stamps were altered. The jury found that the testimony of the Government's witnesses corroborated the documentary evidence of Defendant's scheme to defraud.  Assessing credibility of witnesses is left to the province of the jury.  See Whitehead v. Bond, 680 F.3d 919, 928 (7th Cir. 2012) ("Since the credibility of witnesses is peculiarly for the jury, it is an invasion of the jury's province to grant a new trial merely because the evidence was sharply in conflict.  Even when evidence is contradictory, it's the jury's job—not the district court's job or the job of a panel of appellate judges—to figure out who's telling the truth.").

Additionally, Defendant argues that the prosecutor shifted the burden of proof to the Defendant during the prosecutor's rebuttal

closing argument "by commenting on how the Defendant did not produce evidence." <u>See</u> Motion, d/e 94, p. 2.  The Government argues that Defendant's argument is a mischaracterization of what the prosecutor said.  The Court agrees.  During the trial, Defendant presented testimony that she had legitimate YMCA memberships during 2009, 2010, 2011, and 2012 for which she submitted reimbursement requests for travel to the YMCA.  However, Defendant never supplied documentary evidence showing the memberships, and the YMCA did not have any record of those alleged memberships.  In fact, the YMCA employee, Karen Pyarli, testified that the YMCA in Edwardsville had no record of a membership for Defendant for the years 2009, 2010, 2011, and 2012 or a visit from Defendant in those years.  Defendant did submit membership cards for years between 2001 and 2007.  The Government commented on the years for which Defendant produced YMCA membership and the years she did not, the latter of which are the relevant years.  The Court does not find the prosecutor's statements so improper to render the need for a new trial.  <u>See</u> <u>United States v. Glover</u>, 479 F.3d 511, 520 (7th Cir. 2007) ("If the evidence at issue does not implicate a defendant's right

against self-incrimination, and the jury has been properly
instructed as to the burden of proof, a prosecutor may comment on
a defendant's failure to present evidence contradicting the
government's proof at trial.  Likewise, the government may
emphasize the weakness of the case that the defense presents.");
United States v. DiCaro, 852 F.2d 259, 263 (7th Cir.1988) (holding
that a prosecutor may comment on a defendant's failure to call an
alibi witness).

In looking at the evidence presented at trial, particularly the
testimony set forth above, and assessing the credibility of the trial
witnesses, the Court cannot say that the jury verdicts against
Defendant were against the weight of the evidence such that the
verdicts are a miscarriage of justice.  The same is true considering
the adverse rulings on the pretrial motions and the statements
made in the prosecutor's rebuttal closing.  The record simply does
not leave the Court with a strong doubt as to Defendant
Klaustermeier's guilt.  Defendant Klaustermeier is not entitled to a
new trial.

**C.  The Court Has No Authority to Arrest Judgment.**

Prior to an amendment that went into effect on December 1,

2014, Rule 34 of the Federal Rules of Criminal Procedure required a court to arrest judgment if the court did not have jurisdiction over the charged offense or if the indictment or information did not charge an offense.  Fed. R. Crim. P. 34(a) (2013).  However, the current version of the Federal Rules of Criminal Procedure provides that a court must arrest judgment only if the court does not have jurisdiction over the charged offense.  Fed. R. Crim. P. 34(a) (2016). The advisory committee notes for Rule 34 state that the December 2014 amendment was meant to conform Rule 34 to Rule 12(b) of the Federal Rules of Criminal Procedure, the latter of which had been amended to remove language that had allowed a court, at any time during the pendency of a case, to hear a claim that an indictment or information failed to state an offense.  Fed. R. Crim. P. 34 (2016) advisory committee notes; see also Fed. R. Crim P. 12(b)(3) (2016) (stating that objections based on defects in the indictment or information "must be raised by pretrial motion if the basis for the motion is then reasonably available and the motion can be determined without a trial on the merits").  The result is that Rule 34 no longer authorizes a district court to arrest judgment based on the fact that an indictment fails to charge an offense.

The Indictment that charged Defendant Klaustermeier and was filed on January 3, 2017, long after Rule 34 was amended to remove as a basis for an arrest of judgment that the indictment failed to state an offense.  Therefore, the only basis on which the Court can grant Defendant Klaustermeier's Rule 34 motion is a lack of jurisdiction over the charged offenses.  Defendant Klaustermeier was charged with three counts of mail fraud, in violation of 18 U.S.C. § 1341.  The Court has jurisdiction over these offenses.  See 18 U.S.C. § 3231 ("The district courts of the United States shall have original jurisdiction, exclusive of the courts of the States, of all offenses against the laws of the United States.").  Accordingly, there is no basis for the Court to arrest judgment pursuant to Rule 34. To the extent Defendant Klaustermeier's motion can be construed as one attacking the Indictment pursuant to Rule 12(b)(3), it is untimely.

### III.  CONCLUSION

For the foregoing reasons, Defendant Klaustermeier's post-trial motions based on Rules 29(c), 33, and 34 of the Federal Rules of Criminal Procedure (d/e 94) are DENIED.  Defendant Klaustermeier's sentencing remains set for February 5, 2021, at

2:00 p.m.

**ENTERED: January 19, 2021.**
**FOR THE COURT:**

        *s/ Sue E. Myerscough*
**SUE E. MYERSCOUGH**
**UNITED STATES DISTRICT JUDGE**